UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GARFIELD BECKFORD, A34-074-908,

                    Petitioner,

          -v-                                          15-CV-1020-JTC

MS. LORETTA LYNCH,
MICHAEL PHILIPS, and
TODD TRYON,

                    Respondents.

_____

## INTRODUCTION

Petitioner Garfield Beckford, an alien under a final immigration order of removal from the United States, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS") at the Buffalo Federal Detention Facility in Batavia, New York, pending his removal. *See* Item 1.  As directed by this court's order entered December 21, 2015 (Item 2), respondent[1] has submitted an answer and return (Item 6), along with an accompanying memorandum of law (Item 7) in opposition to the petition, and petitioner has filed a reply (Item 8).

For the reasons that follow, the petition is denied.

_____

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DHS records on file with the court show that petitioner, a native and citizen of Jamaica, was admitted to the United States at New York City on November 18, 1973, as a lawful permanent resident.  *See* Item 6-2 (Exh. A, attached to Declaration of DHS Deportation Officer Juanita Payan, Item 6-1), pp. 2, 20.  Petitioner has been convicted of the following criminal offenses while a resident of the United States:

    a.    On or about November 30, 2006, Beckford was convicted, in the Criminal Court, New York County, State of New York, of Unlawful Possession of Marijuana.

    b.    On or about March 23, 2011, Beckford was convicted, in the Supreme Court, Queens County, State of New York, of Robbery in the 2nd Degree, Criminal Mischief: Intent to Damage Property, Possession of Burglary Tools, Petit Larceny, Criminal Possession of Stolen Property in the 5th Degree and Resisting Arrest.

Item 6-1, ¶ 6; Item 6-2, pp. 10, 23-24.

On April 25, 2011, while in the custody of the New York State Department of Corrections and Community Supervision ("NYSDOCCS") at the Ulster Correctional Facility in Napanoch,  New York, petitioner was encountered by DHS agents assigned to the Criminal Alien Program Unit.  Item 6-1, ¶ 8; Item 6-2, pp. 10, 23-24.  Upon verification of his immigration status, an immigration detainer was lodged against him at the correctional facility.  Item 6-1, ¶ 8.

On February 19, 2014, upon his release from the custody of NYSDOCCS, petitioner was taken into DHS custody and served with a Notice to Appear ("NTA") charging him with being subject to removal from the United States, pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who has

been convicted of an aggravated felony as defined in INA § 101(a)(43)(F), 8 U.S.C. § 1001(a)(43)(F) (a crime of violence); and pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(G), 8 U.S.C. § 1001(a)(43)(G) (a law relating to a theft offense or burglary offense).  Item 6-1, ¶¶ 9,10; Item 6-2, pp. 10, 19-21.

On July 9, 2014, Immigration Judge ("IJ") John B. Reid denied petitioner's applications for relief from removal and ordered petitioner removed from the United States to Jamaica.  Item 6-2, pp. 17-18.  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and on December 3, 2014, the BIA dismissed the appeal.  *Id.* at 11, 15.

On December 12, 2014, DHS sent a presentation packet to the Consulate General of the Jamaica ("Consulate") in New York City, requesting that a travel document be issued for petitioner's removal.  *Id.* at 25-31.  On that same date, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States.  *Id.* at 13.  The warning form advised petitioner, among other things, of penalties under INA § 243, 8 U.S.C. § 1253, for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that pursuant to INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), a failure to comply or provide sufficient evidence of his inability to comply, may result in the extension of the removal period and subject him to further detention.  Petitioner refused to sign the warning form.  *Id.*

On January 5, 2015, petitioner filed in the United States Court of Appeals for the Second Circuit a *pro se* petition for review (PFR) of the BIA's December 3, 2014 order, followed by a motion for stay of removal filed on March 2, 2015.  *See id.* at 33-36 (Docket Sheet, *Petitioner v. Lynch*, 2d Cir. Docket No. 15-242).

In accordance with immigration regulations (*see* 8 C.F.R. § 241.4), DHS reviewed petitioner's custody status in March 2015, and on March 4, 2015, petitioner was notified that DHS had determined to continue his detention based upon the totality of information available in petitioner's case file indicating that he would be a threat to the community and a flight risk if he were to be released from custody.  Item 6-2, pp. 10-12.  An additional review of custody status was conducted by DHS Headquarters Post Order Custody Review Unit ("HQPOCRU"), including an in-person interview of petitioner on June 2, 2015.  *Id.* at 8-9.  Following completion of the file review and interview, petitioner was notified on June 15, 2015 that his detention in DHS custody would continue because his removal could not be processed while the petition for review of the BIA's determination remained pending with the Second Circuit.  *Id.* at 6-7.  Additional custody status reviews were conducted by DHS in September 2015 and December 2015, and petitioner was notified following the completion of each review that DHS had determined to continue his detention in DHS custody pending the Second Circuit's determination of the PFR.  *Id.* at 2-5.

On February 1, 2016, the Second Circuit Court dismissed the PFR, finding that: "Petitioner is removable by reason of having committed an aggravated felony and does not raise any colorable constitutional claim or question of law that the agency mischaracterized

-4-

the evidence or applied the wrong standard when finding that Petitioner did not show a likelihood of torture." *Id.* at 37 (*Petitioner v. Lynch*, 2d Cir. Docket No. 15-242).

Meanwhile, on November 23, 2015, petitioner filed this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal). Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case,

petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a),

which authorizes detention of aliens after the issuance of a final removal order for a period

of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).   Pursuant to immigration regulations, petitioner's order of

removal became final, and the ninety-day removal period commenced, on December 3,

2014, "upon dismissal of [the] appeal by the Board of Immigration Appeals."  8 C.F.R.

§ 1241.1(a).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2)

("During the removal period, the Attorney General *shall* detain the alien.").  The statute also

authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered

removed due to conviction of a crime (like petitioner here)–beyond the expiration of the

ninety-day removal period if it is determined that the alien "is a risk to the community or

unlikely to comply with the order of removal …."  INA § 241(a)(6).[2]

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future."

8 C.F.R. § 241.13(d)(1).   The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."   8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on February 19, 2014, upon his release from the custody of the New York State Department of Corrections and Community Supervision.  *See* Item 6-1, ¶ 10.  His initial detention in DHS custody pending a determination of removability was authorized pursuant to INA § 236.  This authorization continued until December 3, 2014, when the BIA dismissed petitioner's appeal from the IJ's order of removal.  *Id*. at ¶ 12; 8 C.F.R. § 1241.1(a) (order of removal becomes final upon BIA's dismissal of appeal).

After the order of removal became final, petitioner's mandatory detention was authorized by INA § 241(a) and (c), and the 90-day removal period began.  As discussed, DHS then promptly took steps to obtain travel documents for petitioner's removal to Jamaica.  Item 6-1, ¶ 13.  However, on January 5, 2015, petitioner filed his petition for review of the BIA's determination with the Second Circuit, followed by a motion for stay of removal.  *Id.* at ¶ 15-16.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a PFR pending before the circuit court.  *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov. 3, 2011) (filing of petition for circuit court review of final order of removal along with motion for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to stay accompanying PFR of BIA's dismissal of appeal from removal order, forbearance policy

is "the equivalent of a court-ordered stay of removal"); *Shehnaz v. Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181 F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review accompanied by motions to stay removal triggered application of Second Circuit's forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his] *Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged detention violates substantive due process)).

Pursuant to this policy, the removal period which began on December 3, 2014, was "effectively stayed" as of January 5, 2015, when petitioner filed his PFR with the Second Circuit, through February 1, 2016, when the Second Circuit dismissed the PFR. *Luna-Aponte*, 743 F. Supp. 2d at 190. Therefore, as of the date of this decision and order, DHS has had slightly more than 60 days of unencumbered time to obtain the travel documents necessary for execution of the removal order (during which time petitioner's detention was mandatory, *see* INA § 241(a)(2)), and with the circuit court's recent dismissal of petitioner's PFR, there is now a substantial likelihood that his removal will be accomplished in the reasonably foreseeable future.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing

to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing."  *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Jamaica in the reasonably foreseeable future.  He simply alleges that "his removal to Jamaica or any other country is not significantly likely to occur in the reasonably foreseeable future."  Item 1, ¶ 31.  However, as discussed above, the request for a travel document for petitioner remains pending with the Consulate, and there is

nothing in the record before the court to indicate that Jamaican authorities are inclined to deny the request.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Jamaica, indicating no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2010, a total of 1,483 aliens were repatriated to Jamaica; in FY 2011, 1,475 aliens were repatriated to Jamaica; and in FY 2012, 1,311 aliens were repatriated to Jamaica.  See DHS Yearbook of Immigration Statistics: 2012, Table 41: https://www.dhs.gov/yearbook-immigration-statistics-2012-enforcement-actions.  These circumstances provide a reasonable basis for DHS's expectation that a travel document will be issued by the Jamaican government within the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Jamaica.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish his compliance with the requirements of the DHS regulations described above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See* Item 1, ¶ 31.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to

the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process.  Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

-13-

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed.  This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable.  *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:        March 2 , 2016
p:\pending\2015\15-1022.2241F.mar2.2016

-14-